T. W. LYLES, H. H. Muntz, Appellant,

v.

Jim JOHNSON, Appellee.

No. 17350.

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 7, 1979.

Rehearing Denied July 12, 1979.

McFarland & Tondre, Van E. McFarland, Houston, for appellant.

Loftis, Rowan, Files, Bain & Clayton, Jerry Bain and Samuel M. George, Tyler, for appellee.

Before WARREN, DOYLE and EVANS, JJ.

WARREN, Justice.

This is an appeal by T. W. Lyles and H. H. Muntz from a judgment entered on a jury verdict awarding Jim Johnson special and exemplary damages.

The facts of this case are particularly complicated, involving numerous transactions between the parties in their individual capacities as well as between the appellee and Ranchco, Inc., a Texas corporation, wholly owned by the parties. Prior to November of 1971, the appellants, medical doctors, had invested in several tracts of land which they were interested in selling. An agreement was entered between the appellants and the appellee, a licensed realtor, to form a corporation for the primary purpose of investing in real property. On January 14, 1971, they formed Ranchco, Inc., naming each party a director and issuing to each party one-third of the corporate stock. Thereafter, appellee became the president of the corporation and was authorized to purchase and convey realty on behalf of the corporation. As the corporation's president, appellee received a salary of five hundred dollars per month, a car, and an expense allowance.

Shortly after the formation of the corporation, the appellants conveyed their property to it. By August of 1972, all the property which had been conveyed by the appellants had been conveyed by the corporation to other persons.

After the corporation had been formed, the appellee performed real estate services for the appellants in their individual capacities. During this period of time, an option was obtained to purchase an 18.446 acre tract of land. The option was taken in the name of Goss Townes as trustee; however, it failed to identify the legal entity for whom the option was held in trust. On June 14, 1972, the option was exercised in

part and Goss Townes took legal title to approximately six acres of land. Once again the instruments failed to identify the legal entity (ies) who were the beneficial owners of the property.

In August of 1972, a dispute arose pertaining to the appellee's management of the corporate finances which culminated in a resolution of the corporation's board of directors removing him from office. On October 19, 1972, the parties entered into an agreement purporting to define their rights and obligations pertaining to the management of the corporate funds, the stock of the corporation, and the 18.446 acre tract. This agreement, after reciting that a dispute existed pertaining to the appellee's management of the corporation's finances, provided:

This contract and its performance is contingent upon and will only be in effect in the event the . . . [appellants] . . . start construction of and establish the Village South Nursing Home to be located in College Station, Texas. In the event such nursing home is not built and established, then this agreement shall be null and void and of no further force and effect.

In the following provisions, appellee agreed to convey his one-third interest in the nursing home, his interest in the land on which the nursing home was to be located, and his interest in the option to purchase additional land adjacent to the tract of land already purchased. The contract then described the 18.446 acre tract of land owned by or held under option by Goss Townes as trustee. Appellee further agreed to lend his best efforts and to execute any and all necessary documents to facilitate the construction of the nursing home.

The next paragraph of the contract recited that Goss Townes held the option to purchase the remaining acreage of the tract as trustee for the corporation. This paragraph authorized the trustee to exercise the option and to convey the property to the corporation or to any party designated by the appellants. Appellee also agreed to ex-

ecute proper conveyances to the party or parties designated by the appellants.

Following these provisions the contract stated:

The following items to be performed are not contingent upon the successful completion of the nursing home . . . but are to be performed absolutely . .

The contract then provided that the appellee would execute a promissory note in the amount of $7,500 payable to the appellants and that the appellee, by executing the contract, was selling, transferring, assigning and conveying his interest in the stock of the corporation, as well as his interest in any property, real or personal, owned or claimed to be owned by the corporation. The contract was executed by the parties and no one signed in a representative capacity for the corporation.

In December of 1972, the option to purchase the remainder of the property was exercised. By November of 1973, no significant progress had been made in establishing a nursing home on the property. The appellee notified the appellants of his one-third interest in the tract and further asserted a claim for real estate commissions pertaining to transactions unrelated to the 18.446 acre tract of land.

In December of 1973, the trustee conveyed the property to the appellants who then conveyed the property to O. C. Cooper.

On April 26, 1974, the appellee filed a trespass to try title suit against Cooper. In June of 1977, Cooper sued the appellants for breach of the covenants contained in the general warranty deed. In December of 1977, the appellee sued the appellants alleging that they fraudulently induced the trustee, a joint agent, to convey the property and sought damages for one-third of the fair market value of the 18.446 acre tract.

In March of 1978, the corporation filed a petition in intervention which was joined by the appellants. The appellants requested the following relief: (1) reimbursement from the appellee for overdrafts on commissions in the approximate amount of $13,400

for sales of real estate made by the appellee on behalf of the appellants individually; (2) damages in the approximate amount of $5,400 for money had and received by appellee on behalf of the appellants individually; and (3) for a set-off of one-third of the amount of expenses incurred in attempting to establish the nursing home if, and only if, it was determined that the appellee had an interest in the 18.446 acre tract.

The appellee then filed a third amended petition expanding his previous cause of action by requesting exemplary damages and by adding an additional cause of action. The essence of the additional cause of action was that the appellants owed the appellee an accounting for sums due the appellee arising from his relationship with the corporation. Specifically the appellee prayed for one-third of the net profits of the corporation, for real estate commissions, and for travel reimbursement. No cause of action was asserted against the corporation and no relief was requested against the corporation.

After the conclusion of the evidence, O. C. Cooper was granted a directed verdict. The appellee's causes of action against the appellants were submitted to the jury on five special issues. The first special issue related to the "accounting" cause of action and purportedly covered the transactions between the parties exclusive of their interests in the 18.446 acre tract. The remaining four issues pertained to the tract and inquired as to the amount of damages, actual and exemplary, if any, the appellee was entitled to recover from the appellants. The jury answered all five issues affirmatively awarding damages in response to the first cause of action in the amount of $6,135.35, and in response to the second cause of action in the amount of $27,730.00 actual damages and $50,000.00 punitive damages.

Appellants assign 23 points of error which are too numerous and lengthy to identify individually. We have carefully reviewed the appellants' assignments of error and agree that reversible error was

committed. For the reasons hereinafter stated, we reverse the judgment of the trial court and render judgment for the appellants.

## I.

### *The "Accounting" Cause of Action*

The first special issue read as follows,

What sum of money if now paid in cash, if any, do you find from a preponderance of the evidence to be due and owing from Lyles and/or Muntz as a result of their business relationships, excluding the 18.446 acre tract of land in question.

 The appellee's trial pleadings asserted that the appellants owed him an accounting "for the sums due him from Ranchco, Inc." The petition then alleged the appellee's relationships and transactions with the corporation, Ranchco, Inc. The proof offered at trial was that the corporation had breached certain contracts with the appellee for real estate commissions and for travel reimbursement. Additionally, the appellee asserted that he was entitled to one-third of the corporation's profits. It is clear that the appellee was awarded a judgment against the appellants on pleadings and evidence which, at most, alleged causes of action against the corporation. The record is devoid of any pleadings or evidence which could be construed to impose liability on the appellants for the corporation's actions. In Texas, it is well established that a judgment can not stand unless it is supported by both pleadings and evidence. *Jennings v. Texas Farm Mortgage Co.*, 124 Tex. 593, 80 S.W.2d 931 (1935). In the instant case, it was improper for the court to submit the issue to the jury because the appellants objected on grounds of no evidence and no pleadings. See Tex.R.Civ.P. 277; *Scott v. Atchison Topeka & Santa Fe Ry. Co.*, 572 S.W.2d 273, 277 (Tex.1978). Moreover, in the instant case the statute of frauds, art. 6573a, § 20 V.A.C.S., Supp. (1978–1979) would prevent any recovery against appellants for real estate commissions, and section 26.01, Texas Business and Commerce Code, would prevent appellee

from holding the appellants responsible for the debt or default of the corporation. Both of these defenses were plead and properly preserved by the appellants.

## II.

### *"The 18.446 Acre Tract"*

The appellants contend that the appellee's cause of action for fraudulently inducing the joint agent to convey the property was barred by the two-year statute of limitations. Appellee does not dispute the applicability of the two year statute of limitations but asserts (a) that the statute of limitations did not begin to run until a directed verdict was granted to O. C. Cooper; (b) that article 5539c V.A.T.S. permitted him to file his causes of action in response to the petition in intervention; and (c) that the appellants waived the limitations defense by failing to request a special issue.

Appellee's primary assertion is that his cause of action did not accrue until the defendant Cooper obtained a directed verdict. Appellee argues that it was only at this point he sustained damages. In support of this contention, reliance is placed on *Atkins v. Crosland*, 417 S.W.2d 150 (Tex. 1967).

 *Atkins v. Crosland* reaffirmed the general rule that absent a statutory exception or fraudulent concealment, a cause of action sounding in tort accrues when the tort is committed, provided the tortious act invades some personal or property right of the plaintiff. Once this legal injury is sustained, the statute begins to run even where little, if any, damages are immediately apparent.

 The appellee's cause of action for fraud pertained to the misrepresentations made by the appellants inducing the transfer of the property. The fraud, although constructive in nature because it was indirectly perpetrated on the appellee through his agent(s), was complete and the tort committed by December 13, 1973. The effect of the transaction constituted a legal injury

because the appellee was fraudulently induced to convey his interest in the property. The appellee manifested his knowledge of the fraud when he instituted suit against Cooper on April 26, 1974, a period of approximately three years and three months before he sought to recover damages for the fraud.

A similar case is *Dunn v. Travelers Insurance Co.*, 362 S.W.2d 412 (Tex.Civ.App.-San Antonio 1962, writ ref'd n.r.e.). In that case, an employer falsely represented that he had filed a workman's compensation claim on behalf of an employee. The employee, after learning of the fraud, filed his own claim which was rejected. Thereafter, the employee sued the employer for fraud to which the employer plead limitations. The court of civil appeals rejected the employee's contention that the cause of action accrued when his compensation claim had been refused. Instead, the court held that the cause of action accrued when the employee learned of the fraud. For these reasons, we hold that the appellee's cause of action accrued when he discovered the fraud which had invaded his legal interests.

■ Appellee also urges that the limitations defense was waived because the appellants did not request a special issue. Tex.R.Civ.P. 279 provides that a defense shall be waived if the party relying upon the defense fails to request an issue. This rule applies, however, only where the defense has not been conclusively established. *Texas Reserve Life Ins. Co. v. Security Title Co.*, 352 S.W.2d 347, 351 (Tex.Civ.App.-San Antonio 1961, writ ref'd n.r.e.); 3 McDonald Texas Civil Practice, § 12.36.2 at 433 (1970). In the instant case, the dates of the conveyances have been conclusively established. Moreover, the appellee's pleadings conclusively demonstrate that he had full knowledge of the tortious act by April 26, 1974, when he instituted suit against O. C. Cooper. Based on these dates, which were undisputed and conclusively established, there was no material issue of fact to be submitted to the jury for determination. See *Neuhaus v. Kain*, 557 S.W.2d 125 (Tex. Civ.App.-Corpus Christi 1977, writ ref'd

n.r.e.) (holding that defense of fraud was waived where no special issue was submitted and there was disputed evidence). Under these circumstances, the question was purely one of law which had been properly presented to the trial court by the appellants' motion for judgment notwithstanding the verdict.

■ Appellee also asserts that the limitations bar was lifted for a period of 30 days by virtue of Tex.Rev.Civ.Stat. art. 5539c because the appellants joined in the petition for intervention seeking affirmative relief. In order for article 5539c to be applicable, three requirements must be met: (1) a pleading must be filed which seeks affirmative relief, (2) the responsive pleading must arise out of the same transaction or occurrence as the pleading seeking affirmative relief, and (3) the responsive pleading must be filed within 30 days. The instant case does not present an issue as to the third requirement. In order to determine whether the appellee can rely upon article 5539c, it is necessary to examine the appellants' allegations contained in the petition for intervention.

The appellants, in their individual capacities, were seeking the following relief: (1) reimbursement for the overdraft of real estate commissions in the amount of $13,-405.58 paid to the appellee by the appellants, (2) damages in the amount of $5,376.78 for money had and received by appellee belonging to the appellants individually and (3) a set-off of one-third of the amount of expenses incurred in attempting to establish the nursing home *if, and only if,* it was determined that the appellee had an interest in the 18.446 acre tract.

The first two claims are unrelated to the conveyance of the 18.446 acre tract, and therefore did not arise out of the same transaction or occurrence. The remaining claim, an off-set, is not an affirmative claim. This claim is in response to the appellee's earlier pleading and is conditional upon the appellee establishing an interest in the property. As such, it would be determined only if the appellants' affirmative defenses were found to be without merit.

The appellee can not rely on this allegation to lift the bar of limitations. See *Hobbs Trailers v. J. T. Arnett Grain Company, Inc.*, 560 S.W.2d 85 (Tex.1977).

The remaining affirmative allegations in the petition for intervention must be construed as being asserted by Ranchco, Inc. It is apparent that the appellants, having no justiciable interest in these matters, would have no standing to assert them. Appellee can not rely on these allegations, because they are being asserted by a different party and, by logical necessity, constitute a different transaction or occurrence.

For these reasons, article 5539c is not applicable to the facts of the instant case and we conclude that the appellee's claim for fraud was barred by limitations.

The judgment of the trial court is reversed and is rendered that the appellee take nothing.